# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YEADON FABRIC DOMES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ROBERTS ENVIRONMENTAL CONTROL CORPORATION, <br><br> Defendant. <br><br> and <br><br> ROBERTS ENVIRONMENTAL CONTROL CORPORATION, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> MESTEK, INC. and TEMPRITE, INC. <br><br> Third-Party Defendants. | No. 15 CV 6679 <br><br> Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Yeadon Fabric Domes, LLC contracted with the Hanover Park District to replace the District's tennis air dome. Yeadon subcontracted the replacement of the HVAC system in the dome to defendant Roberts Environmental Control Corporation. After installing one particular component of the dome's inflation mechanism, a Roberts technician returned to service the component. In doing so, he detached a pressure sensor, which resulted in the dome overinflating and tearing. Yeadon filed suit against Roberts for breach of contract and negligence,

seeking damages. Roberts in turn filed a third-party complaint against third-party defendants Mestek, Inc. and Temprite, Inc., alleging that a technician from one of those entities told Roberts's technician to detach the sensor. Roberts seeks contribution from Mestek and Temprite in the event that it is held liable for negligence and ordered to pay more than its pro rata share.

Mestek and Temprite move to dismiss Roberts's third-party complaint. Roberts moves for partial judgment on the pleadings, seeking dismissal of Yeadon's negligence claim. For the following reasons, both motions are denied.

**I.     Legal Standards**

A complaint may be dismissed pursuant to Rule 12(b)(6) if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012). Rule 12(c) permits a party to move for judgment after the answer has been filed. Fed. R. Civ. P. 12(c). The same standard applies to both motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c). *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). All reasonable inferences

are drawn in favor of the non-movant. *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015).

**II.     Facts**

On August 26, 2013, plaintiff Yeadon Fabric Domes, LLC entered into a contract with the Hanover Park District to replace the District's tennis air dome. [1] ¶ 5; [35] ¶ 8.[1] Yeadon agreed to design, furnish, and replace the dome and related components, including the HVAC, electrical, and alarm systems, and to perform ancillary work for the dome. [1] ¶ 6; [35] ¶ 8. On October 10, 2013, Yeadon entered into a subcontractor agreement with defendant Roberts Environmental Control Corporation, under which Roberts agreed to perform the work related to the HVAC system. [1] ¶ 7; [35] ¶ 9.

On April 4, 2014, Roberts replaced one particular unit required to operate the dome, the Honeywell Flame Control module. [1] ¶ 8; [35] ¶ 10. Eleven days later, the District told Yeadon that the exhaust from the unit was blackening the surface of the dome. [1] ¶ 9; [35] ¶ 11. On April 18, 2014, Roberts tried to fix the flame control module. [1] ¶ 10; [35] ¶ 11. In doing so, it disconnected the pressure sensing tube, which resulted in over-inflating the dome. [1] ¶ 10; [35] ¶ 11. The dome ruptured, its fabric tearing in several locations, and began to deflate. [1] ¶¶ 11–12; [35] ¶ 12. Yeadon asked Roberts to fix it but got no response. [1] ¶ 12. To mitigate the damage and prevent further damage, Yeadon made temporary repairs to the fabric and structural components of the dome. [1] ¶ 13; [35] ¶ 13. In the following

---

[1] Bracketed numbers refer to entries on the district court docket.

3

weeks, Yeadon visited the dome several times to make repairs and re-inflate it. [1] ¶ 14; [35] ¶ 13.

In its third-party complaint against third-party defendants Mestek, Inc. and Temprite, Inc., Roberts alleges that on April 18, while servicing the flame control module, its technician spoke to Yeadon's technical support representative, who instructed the Roberts technician to detach a wire sensor in order to run a diagnostic test on the module. [35] ¶ 16. Roberts identifies that technical support representative as a Temprite employee, and further alleges that Yeadon had retained Mestek and Temprite for technical support services prior to the incident. [35] ¶¶ 17–18, 37, 61.

### III. Analysis

Mestek's motion to dismiss and Roberts's motion for partial judgment on the pleadings incorporate a near-identical set of facts, and both rely heavily on the Illinois Supreme Court's holding in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 91 (1982).

#### A. The *Moorman* Doctrine

In *Moorman*, the Illinois Supreme Court held that a plaintiff cannot recover for solely economic losses in a tort action. 91 Ill.2d at 91. The court reasoned that contract law is best suited to provide a remedy for loss related to defeated expectations in a commercial bargain, while tort theory is more appropriate when a plaintiff is exposed to an unreasonable risk of injury. *Id.* at 81. This holding applies to cases involving negligently-performed services. *See Anderson Elec., Inc. v.*

*Ledbetter Erection Corp.*, 115 Ill.2d 146, 153 (1986). But three exceptions may apply: 1) where the plaintiff sustained personal injury or property damage resulting from a sudden or dangerous occurrence; 2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation; and 3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. *In re Chicago Flood Litig.*, 176 Ill.2d 179, 199 (1997) (citations omitted).

Mestek argues that the *Moorman* doctrine precludes liability for Yeadon's negligence claim against Roberts, because Yeadon alleges only economic losses. Mestek believes that, as a result, Roberts's contribution claim against it fails. Roberts does not respond to Mestek's motion to dismiss, but instead incorporates Mestek's argument into its own motion against Yeadon. Yeadon invokes the "sudden and dangerous" exception. The negligence claim survives judgment on the pleadings if two conditions are adequately alleged: (1) a sudden or dangerous occurrence (2) resulted in property damage. *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 327 Ill.App.3d 346, 352 (4th Dist. 2002).

    *1.    Suddenness and Dangerousness*

In determining whether a negligence claim involves a sudden occurrence, a court must consider "the suddenness of the *occurrence of an event* —the point when the injury occurs (a fire, overturning of a truck, collapse of a ceiling)—where such occurrence causes personal injury or damage to property external to the defective

5

product which exposes a party to an unreasonable risk of injury to himself or his property, rather than the suddenness or length of time within which the *defect or cause of the occurrence* develops (ignition of polyurethane padding, locking wheel brakes, water leakage) and manifests itself in the sudden and calamitous occurrence." *United Air Lines, Inc. v. CEI Indus. of Ill., Inc.*, 148 Ill.App.3d 332, 339 (1st Dist. 1986) (emphasis in original).

Yeadon argues that the rupture of the dome constitutes a sudden occurrence, and the tear in the dome fabric constitutes property damage. It alleges that Roberts negligently created a defective flame control module when it installed the module on April 4, 2014, and negligently removed a pressure sensor two weeks later, and that those two defective mechanisms caused the dome to rupture. Roberts says the entire sequence of events took two weeks, which is not sudden. But Roberts misapprehends the relevant time period. Two weeks passed between Roberts's installation of the HVAC unit and its removal of the pressure sensor, but the occurrence here is the rupture, not the events leading up to the rupture. The complaint is at best unclear as to how long the dome took to rupture—it could have happened in a matter of seconds or hours. To establish that the rupture was not a sudden event such that the *Moorman* doctrine precludes liability, further factual development is necessary.

Both Mestek and Roberts argue that the exception does not apply because Yeadon's complaint does not describe the event as sufficiently dangerous or calamitous. Indeed, the Illinois Supreme Court stated that, in establishing the

6

exception, it "had in mind fires, explosions, or other calamitous occurrences due to the failure of a product and the resulting risk of harm to persons or property." *Loman v. Freeman*, 229 Ill.2d 104, 110 (2008). In *Moorman*, the court held that a crack in a steel tank, which had not been discovered until the tank was emptied, was not of the sudden and dangerous character that would give rise to a tort law claim for economic damages. 91 Ill.2d at 85. But a tank full of water that ruptured due to a defect, sending its components and contents in all directions, did give rise to such a claim. *See Bi-Petro Refining Co., Inc. v. Hartness Painting, Inc.*, 120 Ill.App.3d 556, 560 (4th Dist. 1983). Likewise, the collapse of a ceiling caused by water leaking through a defective roof constitutes a sudden and dangerous occurrence such that a plaintiff may recover in a tort action for the resulting property damage. *See United Air Lines, Inc.*, 148 Ill.App.3d at 340–41.

Again, Yeadon does not provide enough detail in its complaint to plead itself out of court. The complaint alleged that a large dome—at least big enough to house a tennis court—tore and collapsed due to Roberts's actions. And Yeadon undertook repairs "to prevent further damage," which likely refers to further damage to the dome itself, as well as anyone or anything at risk of injury from its collapse. It is reasonable to infer that the tearing and collapse of a large dome constitutes the type of sudden and dangerous event that can give rise to a tort claim, so long as it results in property damage.

### 2. Property Damage

For the exception to the *Moorman* doctrine to apply, the sudden and dangerous event must result in personal injury or property damage. *In re Chicago Flood Litig.*, 176 Ill.2d at 199–200. The property damage cannot relate to the defective product itself—there must be damage to "other property." *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill.2d 21, 41–42 (1997). But a product and one of its component parts can constitute two separate products such that a plaintiff may recover in tort when a defect in one causes damage to the other. *Id.* at 51. "[T]o determine whether a defective product caused damage to 'other property' the court must focus on the injured party's bargained-for expectation." *Id.* at 46. If a party bargained separately for individual components, then those components constitute separate products. *Id.* at 47. If a defective component constituting a separate and distinct product causes damage to another component or to the whole, then the plaintiff lost more than it bargained for, and it can recover under tort theory. *Id.* at 49–50.

Mestek and Roberts state without elaboration that there was no damage to other property, implying that the dome and the flame control module constitute one product. Yeadon identifies the dome itself as the other property that was damaged as a result of the defective flame control module. The relationship between the HVAC system, the flame control module, the pressure sensor, and the dome cannot be determined from the pleadings. Construing the complaint in favor of Yeadon, and considering the lack of support for Roberts's and Mestek's contention, the flame

8

control module and the dome will be considered as separate products under the *Moorman* doctrine at this stage of the proceedings. Because a defect in one caused damage to the other as a result of a plausibly alleged sudden and dangerous event, Yeadon can proceed with its tort theory. Therefore, Roberts's motion is denied, and Yeadon's negligence claim survives the pleadings stage.

Mestek's arguments based on the *Moorman* doctrine also fail, even though Mestek's motion is not directly related to Roberts's motion, and the relationship between Yeadon and Mestek is different than that between Yeadon and Roberts. Roberts's third-party complaint incorporates the relevant facts alleged in Yeadon's complaint, and Roberts adopts Mestek's *Moorman*-related arguments. Those arguments are insufficient to justify dismissal of Yeadon's claim against Roberts, and without more, they fail to justify dismissal of Roberts's claim against Mestek.

### B. Mestek's Other Arguments

In addition to its arguments related to the *Moorman* doctrine, Mestek makes two separate arguments in favor of dismissal of Roberts's third-party complaint. First, it argues that Roberts fails to establish that a right of contribution may exist between Roberts and Mestek. Under the Joint Tortfeasor Contribution Act, if two parties are found liable in tort to the same person for the same injury, and one of those parties pays more than its pro rata share of the common liability, that tortfeasor is entitled to contribution from the other tortfeasor. 740 ILCS 100/2(a)–(b). To seek contribution from Mestek, Roberts must establish that Mestek could be liable in tort to Yeadon for the damage alleged by Yeadon against Roberts. *See*

9

*Heinrich v. Peabody Int'l Corp.*, 99 Ill.2d 344, 349 (1984) ("A claimant seeking [contribution] need show only a common injury which his acts and those of the contributor combined to bring about and which makes them subject to liability in tort . . . ."). Accordingly, to state a cause for negligence that would give rise to a right of contribution, Roberts must show that Mestek owed Yeadon a duty and breached that duty, proximately causing injury to Yeadon. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009).

Mestek argues that the third-party complaint does not allege the necessary elements of a negligence claim to establish that Mestek might be liable to Yeadon. Roberts's complaint alleges that Mestek owed a duty to Yeadon to provide complete and accurate technical support to Yeadon and its subcontractors, that Mestek breached that duty by failing to provide complete and accurate information to the Roberts technician who contacted Mestek on April 18, and that that breach proximately caused the damage to Yeadon's dome. Mestek says that Roberts fails to specify the type of technical support Mestek was under a duty to provide to Yeadon, the inaccurate information conveyed that constituted breach of that duty, and how Mestek's breach caused Yeadon's injury. Roberts did not file a response to Mestek's motion.

Ordinarily, if a party fails to respond to an argument, any responsive argument is waived. However, only the narrowest possible reading of Roberts's complaint would give weight to Mestek's arguments. The third-party complaint alleges the necessary elements of a common-law negligence claim, and contains

enough factual detail to provide Mestek with notice of that claim and of a possible right of contribution. Thus, Mestek's argument does not warrant dismissal of Roberts's third-party complaint.

Mestek's second argument in favor of dismissal relates to the exhibit to Roberts's third-party complaint, Yeadon's interrogatory responses, which seem to contradict some of Roberts's allegations. Specifically, Mestek argues that, according to the responses, Mestek did not serve as Yeadon's technical support vendor for the dome's inflation unit or work on the unit on April 18, 2014, and that Yeadon's employees provided technical support for the dome. According to the third-party complaint, Roberts's technician disconnected the pressure sensor on the instructions of "Yeadon's Technical Support," and the attached interrogatory responses might point to Yeadon, not Mestek, as the source of technical support. If Mestek did not provide the technical support at issue, it is not liable.

Again, Roberts's failure to respond to Mestek weighs against it, but Mestek's argument is too thin, even without a response, to justify dismissal of the third-party complaint. Roberts's interrogatories are confusingly worded, so Yeadon's responses do not make clear who exactly Roberts's technician spoke to on April 18, 2014. However, they do make clear that, while Yeadon did not have a separate technical support service contract with any other company on that day, defendant Temprite (a division of Mestek) offered technical support for the dome inflation units that it manufactures. It is reasonable to infer that when the Roberts technician reached out to Yeadon's technical support provider, he contacted a Mestek employee—an

11

inference consistent with Roberts's allegation in its complaint. Thus, Mestek's argument fails.

Mestek's motion to dismiss is denied and Roberts's third-party complaint survives.

## IV. Conclusion

Defendant Roberts's motion for judgment on the pleadings, [57], is denied. The motion to dismiss, [45], filed by third-party defendants Mestek, Inc. and Temprite, Inc., is also denied.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: 7/21/2016